**BRIGGS et v BOYLE et**

Ohio Appeals, 8th Dist., Cuyahoga Co.

No. 18280. Decided Nov. 10, 1941.

Cary R. Alburn, Cleveland; Hauxhurst, Inglis, Sharp & Cull, Cleveland, for plaintiffs-appellees.

Frank T. Cullitan, County Prosecutor, Cleveland; Frederick W. Frey, Asst., Cleveland, for defendant-appellant.

The facts are stated fully in the dissenting opinion of MORGAN, J.

## OPINION

It is the opinion of the majority of this court that the judgment of the Court of Common Pleas should be reversed for error of law by reason of non-compliance with §12075 GC and §12077 GC, and final judgment is entered for the defendant-appellant herein. Exceptions noted.

LIEGHLEY, PJ., SKEEL, J., concur.
MORGAN, J., dissents.

By MORGAN, J. (Dissenting):

The taxing authorities fixed a valuation on the residence property of Dr. C. E. Briggs, now deceased, located at the northwest corner of Coventry Road and East Overlook Road, Cleveland Heights, Ohio, for the years 1935 and 1936 at $298,410.00. On April 19, 1937, the estate filed its complaint seeking a reduction in the valuation of the property for 1936, claiming an excess valuation of $127,090.00, a similar complaint seeking a reduction in the valuation for the year 1935 having been previously filed.

In order to get the benefit of the full tax payments on the federal estate and the state inheritance taxes, the estate on Sept. 14, 1937, paid the taxes for the years 1935 and 1936, as assessed in the amount of $14,734.48. On the face of the check for the said amount appeared the words "paid under protest". This check was mailed to the county treasurer and was enclosed in a letter to that official in the following words:

"Herewith enclosed find check in the amount of $14,734.48. We are paying this amount under protest pending the final decision of the Board of Revision upon our complaint No. 35564 against the assessed valuation of the property in Cleveland Heights, Ohio described in the above mentioned complaint."

Later, on November 19, 1937, the Board of Tax Revision disallowed the claim and an appeal was taken to the Ohio State Tax Commission. On October 20, 1938, the Ohio State Tax Commission reduced the valuation of the said property for each of the two years 1935 and 1936 to $197,000.00, or a reduction of $101,410.00. The County Treasurer and the County Auditor refused to make a refund and in less than one year from the date of the action of the Ohio State Tax Commission in making said reduction, the plaintiffs brought this action to recover the over-payment of taxes.

The case come on for hearing in the Common Pleas Court and the trial judge gave a judgment for the plaintiffs for $6411.75. From this judgment the defendant appealed.

Sec. 5611-1 GC provides that "whenever the tax commission of Ohio determines the valuation or liability of property for taxes * * * such determination shall become final and conclusive for the current year unless reversed, vacated or modified, as hereinafter provided".

The determination of the tax commission in this case has not been reversed, vacated or modified so that by statute the valuations fixed by the tax commission on this property for the years 1935 and 1936 are "final and conclusive".

It follows that the plaintiffs have overpaid the taxes on this property for the years 1935 and 1936 in the amount of the judgment recovered by plaintiffs in the Common Pleas Court. All this is conceded by defendants in this case, but they contend that plaintiffs are barred from recovery of the overpayment of taxes by virtue of the operation of §12075 GC and §12077 GC.

Sec. 12075 GC reads as follows:

"Common pleas and superior courts may enjoin the illegal levy or collection of taxes and assessments, and entertain actions to recover them back when collected, without regard to the amount thereof, but no recovery shall be had unless the action be brought within one year after the taxes or assessments are collected."

In my opinion this section does not bar recovery in this case for the reason that no right of action accrued to the plaintiffs until the determination of the Ohio State Tax Commission reducing the valuation of this property. As stated in **25 O. Jur. 532:**

"The plea of the statute of limitations goes to the existence of the cause of action and the statute begins to run against an action from the time such causes of action accrue."

And in **25 O. Jur. 533:**

"Within the meaning of the statute of limitations a cause of action cannot be said to accrue until the claim or right on which it is founded has matured so that an action can be brought against it."

To the same effect is 17 Ruling Case Law, 748-755. A large number of cases in Ohio and elsewhere sustaining this proposition are cited in Ohio Jurisprudence and in Ruling Case Law.

If the position of the defendant is sound in his claim that plaintiffs are barred from recovery in this case because the action was not brought within one year after the payment of the taxes, then no action could have been brought by plaintiffs to recover the over-payment at any time after the determination of the valuation of this property by the Ohio State Tax Commission inasmuch as this determination was made more than one year after the payment of the taxes. This would lead to the anomalous result if well founded, that the operation of the statute of limitations deprived the State Commission of the power to render an effective judgment in a matter of which it had acquired jurisdiction by law. It is my opinion that the court should adopt any reasonable construction that will avoid such an absurd result.

Such a construction of the section is possible and it is a reasonable one. **Sec. 12075 GC,** provides in effect that

an illegal levy of collection of taxes may be enjoined or recovered back when collected. The natural construction of this language is that the section refers to the recovery of taxes illegally collected, when an injunction against their collection would have been granted if the taxpayer had sought such relief. In this case, however, no injunction could have been secured to restrain the collection of these taxes at the time they were paid by the plaintiff because the collection was legal and the element of illegality entered only when the tax valuation was reduced by the Ohio State Tax Commission.

The defendants also contend, and a majority of this court have found, the plaintiff's claim is also barred because the check for the amount of the taxes and the accompanying letter do not comply with **§12077 GC.** The pertinent part of that section is as follows:

"If a plaintiff in an action to recover back taxes or assessments or both, alleges and proves that he or the corporation or deceased person whose estate he represents, at the time of paying such taxes or assessments, filed a written protest as to the portion sought to be recovered, specifying the nature of his claim as to the illegality thereof, together with notice of his intention to sue under this chapter, such action shall not be dismissed on the ground that the taxes and assessments sought to be recovered were voluntarily paid."

It is my opinion that the action of the plaintiffs in marking the check by which the taxes were paid with the words "paid under protest" and the letter which accompanied the check to the county treasurer, constituted a substantial compliance with **§12077 GC.** The letter stated that the payment was made "under protest pending the final decision of the Board of Revision, upon complaint No. 35564, against the assessed valuation of the property in Cleveland Heights, Ohio." This com-

plaint to which reference was made in the letter and which was properly filed, gave complete information "as to the portion sought to be recovered, specifying the nature of his claim as to the illegality thereof". The complaint specifically stated the amount of the overassessment and gave full information as to the nature of the claim.

It is true that the letter did not, in so many words, give "notice of his intention to sue under this chapter", but, I ask, how was it possible to give notice of an intention to sue on a cause of action that had not yet accrued". The letter did give notice that the plaintiffs intended to press their complaint filed as to the valuation to "a final decision" Is it possible that the law is so technical that under §12077, GC, it was necessary for the plaintiff to state that if the "final decision" should be in his favor he would file suit to recover the overpayment? Sec. 5611-1 GC provides that the determination of value by the state tax commission "shall become final and conclusive". What reason had the plaintiffs to believe that the defendants would not accept the determination of the state tax commission as to valuation and refund the over-payment without suit? The truth is that while the plaintiff's letter of Sept. 14, 1937, accompanying the check in payment of the taxes did not follow ipsissimis verbis the words of §12077 GC, the letter did give to the county treasurer all of the information required to be given by the provisions of the section.

A few days after this case was decided by this court there appeared the decision of the Supreme Court in **Swetland Co. v Evatt, Tax Commissioner, 139 Oh St 6**. An examination shows that the facts of that case are so different that it cannot be considered an authority controlling the decision in this case. In that case the Ohio Tax Commission decided against the taxpayer and made no reduction in the valuation of his property. In that case also, the same county auditor as is one of the defendants in this case, filed a motion, with the Ohio Tax Commis-

sion to dismiss the appeal "for the reason that the complainant had voluntarily paid all of the taxes on the property for the year 1937, at the full valuation thereof". The Board of Tax Appeals (successor of Ohio Tax Commission) granted the motion. In the present case the auditor filed no such motion with the tax commission and the matter proceeded to a hearing on the merits before the commission, with the result already stated. In fact the county board of revision heard this case on its merits more than two months after the payment of the taxes by the plaintiffs. In the Swetland case no evidence of any letter of protest was offered accompanying the payment of taxes for the last half of 1937, as shown by the finding of the board "that this taxpayer paid the taxes on this property for the last half of 1937 at the full assessed valuation thereof, without protest or objection of any kind".

Based on such evidence Judge Turner in his opinion in the Swetland case said:

"There are not sufficient facts disclosed by the record in this case to show a substantial compliance with that part of §12077 GC which provides "if a plaintiff in an action to recover back taxes or assessments, etc."

By this language the learned judge clearly indicated that "a substantial compliance" by the taxpayer with §12077 GC is all that the statute requires.

Therefore, it is my opinion that not only was there substantial compliance in this case with this section but also that all of the information required to be given by §12077 GC was in fact given by the check and the accompanying letter of protest filed on Sept. 14, 1937.

There is no doubt whatsoever that plaintiffs overpaid their taxes. If this were a matter between individuals everyone would concede that it would be highly immoral for any person to withhold a payment of a refund under these circumstances. It sometimes does

appear that there is a tendency to hold the ordinary rules of morality less binding upon states and counties than upon individuals and least of all upon nations, especially in their international relations. It is my opinion that such a tendency, resulting so often in injustice to the individual and to the private litigant is something which should not be encouraged by the courts.

The situation is that Cuyahoga County and the State of Ohio have received money that rightly belongs to plaintiffs in this case and it should be repaid to them unless there are some statutory provisions making repayment impossible. For the reasons stated, I do not believe that there are any such statutory provisions in this case and therefore this court should proceed to do simple justice to plaintiffs by affirming the judgment of the Common Pleas Court in their favor.